# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **PAUL DAVID STOREY,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **-VS-** | § | **CIVIL NO. 4:11-CV-00433-O** |
| | § | |
| | § | **\*\*\*DEATH PENALTY CASE\*\*\*** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## PETITIONER PAUL STOREY'S REPLY TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF AND EXHIBITS IN SUPPORT

Respectfully submitted,

Michael Logan Ware
1407 Texas Street, Suite 102
Fort Worth, Texas 76102
Phone: (817) 338-4100
Fax: (817) 698-0000


BY:  /s/ Michael Logan Ware
     MICHAEL LOGAN WARE
     State Bar No. 20864200


     Attorney for Paul David Storey

**PETITIONER PAUL STOREY'S REPLY TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT WITH BRIEF
AND EXHIBITS IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Now Come Petitioner, Paul David Storey and files this, his Reply to Respondent's Motion for Summary Judgment.

## I.  Petitioner's Reply is Timely Filed

Petitioner files this Reply in accordance with the FRCP and Local Rule 7.1(e), and the Court's Order granting Petitioner's extension to file his Reply on or before July 2, 2013.

## II. REPLY TO RESPONDENT'S CLAIMS

REPLY AS TO RESPONDENT'S CLAIM FOR RELIEF NUMBER ONE:

Petitioner's trial attorneys were ineffective in failing to investigate, discover, and present vital mitigating evidence.

REPLY AS TO RESPONDENT'S CLAIM FOR RELIEF NUMBER TWO:

The State's Purported Race-Neutral Reasons for Striking Venireman Patterson were Clearly Pretextual.

## <u>REPLY AS TO RESPONDENT'S CLAIM FOR RELIEF NUMBER ONE:</u>

**Petitioner's trial attorneys were ineffective in failing to investigate, discover, and present vital mitigating evidence.**

At the center of Petitioner's Claim for Relief Number One is trial counsels' ineffective use of a mental health professional to investigate mitigating factors including Petitioner's low level of intellectual functioning, his lack of future dangerousness, his negative diagnosis for anti-social personality disorder, and his tendency to follow rather than lead. Trial counsels' failure to investigate and discover these and other mitigating factors clearly meet both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). The State's argument that trial counsel's failure to investigate and discover these mitigating factors did not fall below "an objective standard of reasonableness," and that there is no reasonable probability that these mitigating factors would have changed the outcome of the punishment hearing, is simply wrong. *Id*. at 694. <u>See</u>, <u>e.g.</u>, Juror, Sven Berger's affidavit attached as Exhibit 3 to Petitioner's "Memorandum of Law and Exhibits in Support of Petition for Writ of Habeas Corpus," filed June 14, 2011. [Hereinafter, "Memo in Support"].

Petitioner presented compelling evidence in both the State court writ proceedings and in this Court from Dr. Emily Fallis who reviewed extensive records, has conducted two clinical interviews with Petitioner, interviewed and run personality

tests on  Petitioner's mother and conducted multiple standardized intelligence and personality tests on the Petitioner. See Attached Exhibit A, Dr. Fallis Affidavit at 1. She has recorded her findings in extensive reports presented to both the state court and to this Court.

Through her investigation and testing, Dr. Fallis uncovered crucial mitigating information about Petitioner that trial counsel would have discovered through the effective use of a mental health expert, and which would have likely changed the outcome of Petitioner's punishment hearing. "I read Dr. Fallis' psychological/mitigation evaluation and based on this new information I am certain I would not have voted for the death penalty. In particular, I would have voted that Mr. Storey was not a future danger." Juror Sven Berger's affidavit, *supra*.

Dr. Fallis's post-conviction work has uncovered previously unknown mitigating factors. Dr. Fallis has determined that Petitioner is Borderline Intellectual Functioning with Major Depressive Disorder (See, Ex. 1, p. 16 attached to Petitioner's Memo in Support). She determined that he does not have the diagnosis of Antisocial Personality Disorder and that he was not likely to be a future danger. (*Id*. at pp. 19-21). She also discovered that he had a significantly greater than average "suggestibility" and is a follower not a leader. (*Id*. at p. 15). See Attached Exhibit A. This personality trait was important mitigating information, particularly since

Petitioner was convicted as party to the crime.

Trial counsel was presented with the opportunity to investigate and discover all of these mitigating factors and unreasonably made the decision not to investigate and not to know. That decision not to investigate and not to know cannot be attributed to "trial strategy". The state court's finding that deliberate ignorance is trial strategy is an unreasonable determination of the facts not entitled to a presumption of correctness. See, e.g., State Habeas Clerk's Record (SHCR) 354-356. (". . . it was a matter of sound trial strategy not to get a more formalized written report at that time." Finding 21).

In order to understand some of the fallacies in the Respondent's argument against this claim, it is helpful to review the pertinent facts surrounding trial counsel's use of their mental health expert Dr. Randy Price.

On November 6, 2006, trial counsel obtained a court order appointing Dr. J. Randall Price, Ph.D., a forensic neuropsychologist, to serve as a defense expert. SHCR 253. Twenty months later, on July 14, 2008, three days before the jury venire was impaneled, Dr. Price conducted his "Clinical Interview and History" of Mr. Storey and administered an intelligence test. SHCR 146, 233.[1]

---

[1]There is nothing in the record explaining why Dr. Price waited over twenty months to conduct his interview and testing, nor did the state court, in her findings, address the delay. It does not appear that even an imaginative mind could attribute the delay to "sound trial strategy".

Dr. Price made a few contemporaneous notes of his July 14, 2008 interview with Mr. Storey. Those notes are part of the state habeas clerk's record and are attached to this Reply as Exhibit B. In those contemporaneous notes, of his "Clinical Interview and History", Dr. Price indicated, among other things that Mr. Storey was cooperative and that the "Results" were "valid and reliable". SHCR 234, Ex. B. At that time, Dr. Price also administered three different standardized tests to determine Mr. Storey's level of intellectual functioning. SHCR 276, Ex. C. According to Dr. Price's testing, Mr. Storey's "composite" IQ Index Score was 81 which put him in the "10th percentile", in other words, the bottom 10% of the population SHCR 142, Ex. C.

On September 4, 2008, two days after trial on the merits began, Dr. Price wrote a short letter to trial counsel. SHCR 146, 275 & Ex.C. His "findings" were stated in that "letter" in two sentences:

> In my opinion the results of this evaluation yielded no useful information to assist in Mr. Storey's defense. The neuropsychological test results were within expected limits for Mr. Storey.

SHCR 275 & Ex. C.

On September 8, 2008, toward the end of the trial, counsel had Petitioner initial Dr. Price's September 4 "letter" and the attached test results. SHCR 271,275-76 & Ex. C. Nothing in the record reflects what explanation, if any, was given to Petitioner

6

as to the meaning or purpose of the documents he initialed.

On May 26, 2010, Petitioner filed his state writ with Dr. Emily Fallis's May 20, 2010, sixteen page report attached. SHCR 2.

## The State's Response

In affidavits executed and filed on November 10, 2010 (SHCR 164) and November 3, 2010 (SHCR 135,) trial counsel gave explanations as to why they limited their mental health investigation of Mr. Storey and why they presented no evidence of Mr. Storey's Borderline Intellectual Functioning (bottom 10% of the population). They also gave explanations as to why they presented no mental health expert to testify as to Mr. Storey's lack of future dangerousness, and why they presented no evidence that he, in fact, did not suffer from Anti-Social Personality Disorder. SHCR 135-164. In short, their explanation is that they were unaware of all of the above.

## The State court's unreasonable determination of the "facts".

On December 8, 2010, the State court ordered each side to file proposed findings and conclusions. SHCR 270 & Ex. 4 of Petitioner's Memo in Support. Under Texas procedural law, the state court can only make such an order if the court determines that there are no "controverted, previously unresolved factual issues material to the legality of the applicant's confinement . . ." Tex.Code Crim.Pro. art.

7

11.071, Sec. 9. Mr. Storey's claim of ineffective assistance of counsel had not been "previously" raised, therefore, it <u>had not been</u> previously "resolved". The facts material to that claim were controverted by the State and, likewise, had not been previously resolved. Therefore, the state court should have, at the very least, followed state procedural law, designated the material issues of fact to be resolved and the manner in which they were to be resolved. T.C.C.P., Sec 9(a). The State court disregarded those steps in the process. A fact finding process that does not even follow statutorily mandated procedures is, necessarily, a violation of federal due process and, therefore, is an unreasonable determination of the facts within the meaning of § 2254(d)(2). The state court is not required to hold an evidentiary hearing under state law, but it must, at least, give notice as to the material issues to be resolved and the manner in which those issues are to be resolved. The state court must at least follow its own rules. The state court did not do that. Any facts determined by way of an unsanctioned, unlawful procedure that omits required steps in the process, will necessarily be an "unreasonable determination of the facts". A reasonable determination of the facts requires an adherence to the statutory, fact finding procedures. Since the state court determined that the writ and response raised no "previously unresolved factual issues", the court never made a determination as to how any unresolved factual issues would be resolved. The state court then went on

to rely almost exclusively on trial counsel's proffered affidavits to resolve the, purportedly non-existent, previously unresolved, controverted facts "material to the legality of Applicant's confinement." SHCR 270. The state court first determined there were no controverted facts to be resolved, a clearly erroneous determination; then the court proceeded to resolve the controverted facts ignoring the statutory procedures it was required to use in resolving said facts.

The state court's unreasonable determination of the facts is further evidenced by the unreasonableness of the findings themselves. In essence, the state court's unreasonable determination of the "facts" resulted in unreasonable "facts" being found.

**The Findings**

The state court's findings filed April 29, 2011 reflect the following:

Finding 9.  (SHCR 353) relies heavily on trial counsels' affidavits and touches on the evaluation of Mr. Storey by Dr. Price on July 14, 2008. It makes no mention that the evaluation did not take place until the eve of jury selection or why there was a delay in the evaluation. Likewise, trial counsels' affidavits proffer no reason for the delay. See, Exhibit A at pp. 2-3.

Finding 10.  (SHCR 353) The state court cites trial counsel's affidavit and found that "Dr. Price indicated that Applicant did not take the testing 'seriously.'"

There is nothing in writing or otherwise from Dr. Price himself indicating that Applicant did not take the testing "seriously", there is only counsel's affidavit given over two years after the trial was over. There is not even a purported explanation from Dr. Price as to what that even means, in what context it was said, or how it is relevant to anything. In making this finding, the state court turned a blind eye to Dr. Price's own handwritten, contemporaneous notes which indicated that Mr. Storey was cooperative and that the information he received from Mr. Storey was "valid an reliable". This "fact" was unreasonably determined within the meaning of §2254(d)(2) and cannot be "presumed to be correct" under §2254(e)(1).

Finding 11. (SHCR 353) This finding is completely unsupported by the record. "Dr. Price questioned Applicant at length about his personal history before conducting intelligence tests." There is nothing from Dr. Price that supports this. There are his abbreviated, contemporaneous notes of his interview that appear as if they could have been completed in less than ten minutes. There is nothing that says whether the interview was before or after conducting the intelligence tests. Dr. Price's September 4, 2008 letter simply says that his "evaluation took approximately 6 hours and consisted of a battery of neuropsychological tests and a clinical interview [bill to follow] ."SHCR 141. (See Attached Exhibit C). He says nothing about what part of the "approximately 6 hours" was the battery of tests and what part was the "clinical

interview", or which came first.

These "facts" were unreasonably determined within the meaning of §2254(d)(2) and cannot be "presumed to be correct" under §2254(e)(1).

Findings 12-14; (SHCR 354) These "findings", as almost all of them, are taken verbatim from the State's Proposed Findings. Here, State's proposed findings 15-17 (SHCR 289). Although the state court makes "findings" concerning Dr. Price's collateral sources of information upon which he based his opinions about Mr. Storey, Dr. Price provided none of the information upon which the state court purports to rely. Neither Dr. Price's "Clinical Interview and History",  nor his brief September 4, 2008 "letter", mention anything about his collateral sources of information. Counsel's 2010 affidavit recounts the collateral sources he provided to Dr. Price, but nothing from Dr. Price indicates he ever used, or even looked at, any of those sources, for any purpose, in arriving at, or in corroborating, his opinions about Petitioner.

Further, finding 12 relies on Dr. Price's "Clinical Interview" to assert that "Applicant reported no significant medical or psychological problems . . . "  In fact, Dr. Price's "Clinical Interview" reflects that the Petitioner reported depression before and after jail and that at the time of the interview, he slept 10 hours a day. SHCR 235, 236, 238 & Ex. B, pp. 3, 4, 6. In addition, trial counsel's affidavit reflects that, "we were aware of Mr. Storey's history of depression . . ." SHCR 157.  Mr. Storey not only

suffered from significant psychological problems, according to trial counsel's affidavit, he reported them to him as well.

These "facts" were unreasonably determined within the meaning of §2254(d)(2) and cannot be "presumed to be correct" under §2254(e)(1).

Findings 15; (SHCR 354) There is nothing in the record from Dr. Price "opin[ing] that Applicant would probably meet 'the criteria for a diagnosis of anti-social personality disorder.'" The state court's finding (taken from State's proposed finding 18), is based on counsel's affidavit, not Dr. Price. There is nothing in the record indicating specifically what exactly "probably meet the criteria for a diagnosis of anti-social personality disorder," was based on or what it is supposed to mean. It is not a diagnosis. It is not even a very strong opinion about what a diagnosis might reveal. It is not a reason to shut down a mental health investigation in a death penalty case. The state court's "finding" to the contrary is unreasonable.

These "facts" were unreasonably determined within the meaning of §2254(d)(2) and cannot be "presumed to be correct" under §2254(e)(1).

Finding 16. (SHCR 354-355) Finding 16 is a complete non sequitur. It starts out, "[i]n light of Dr. Price's conclusion that Applicant was not taking the testing seriously . . ." Nowhere in the record does Dr. Price say anything close to that. In 2010, trial counsel's affidavit, not Dr. Price's, stated, Dr. Price "indicated" (not

"concluded") that he did not "believe" that Mr. Storey was "taking the test seriously." Since he gave Mr. Storey several tests, it is not clear which "test" Dr. Price was purportedly referring to when he "indicated" this belief to counsel. There is absolutely no information as to what Dr. Price based his "belief" on or exactly how or when he "indicated" his belief to counsel SHCR 257. Once again, Dr. Price's contemporaneous notes indicate the opposite, that Petitioner was cooperative and that the results of his Clinical Interview were valid and reliable. SHCR 234.

Even if Dr. Price indicated a belief that Mr. Storey would "probably meet the criteria for  diagnosis of anti-social personality disorder", trial counsel's decision to halt all mental health investigation was unreasonable, meets the first prong of *Strickland*, and cannot be attributed to "trial strategy". The basic fallacy here, put forth in trial counsel's affidavit and then echoed in the State's proposed findings and ultimately in the State Court's findings and the State's position in this Court, is that the prosecution could have somehow used a diagnosis of antisocial personality disorder made by a defense expert against the defendant so it was better not to know one way or another. That is simply wrong.

If it turned out that Petitioner was diagnosed with antisocial personality disorder,  obviously the defense could choose not to put on that expert, just as they chose not to put on Dr. Price. On the other hand, if it turned out that he did <u>not</u> meet

the criteria for such a diagnosis, that would be tremendously helpful to Petitioner's case.

The decision by trial counsel is not defensible as "trial strategy".

From Dr. Fallis's investigation, there is now uncontroverted evidence that Petitioner does not suffer from antisocial personality disorder. This important mitigating information should have been investigated and discovered by trial counsel.

Finding 21. (SHCR 355-356) The state court's finding that based on Petitioner's "level of cooperation . . . " it was a matter of sound trial strategy by the defense counsel not to get a more formalized written report . . . "

This is non-sensical. A formal written report by a defense expert is not even discoverable by the prosecution much less admissible in court against the defendant, unless that expert testifies. So it could not have been "sound trial strategy".

These "facts" were unreasonably determined within the meaning of §2254(d)(2) and cannot be "presumed to be correct" under §2254(e)(1).

Finding 24. (SHCR 356)  "Neither Applicant's habeas counsel nor his post-conviction mitigation specialist cite any newly discovered evidence from any source or witness except the Applicant himself." First, that is untrue (See Attached Exhibit A, Fallis Affidavit). Second, if the "Applicant's" credibility is at issue, the state court should have followed state procedural law in order to legitimately and "reasonably"

14

make that determination. Third, even if "Applicant" is determined not to be credible, it is irrational to summarily dismiss everything he says without any analysis whatsoever. The state court did not even bother to make a finding that "Applicant" was not credible as to any fact whatsoever; the state court just seemed to assume that everyone would take it for granted.

These "facts" were unreasonably determined within the meaning of §2254(d)(2) and cannot be "presumed to be correct" under §2254(e)(1).

Finding 30. (SHCR 357)  "Applicant has failed to establish how Dr. Price's assessment of Applicant's intellectual functioning could have affected Applicant's punishment defense, particularly as Applicant's counsel were made aware of the actual test results." Of course the point is not that Dr. Price failed, the point is that trial counsel failed to effectively use or follow-up on information they were made aware of or should have investigated. The State court's finding ("it is not Dr. Price's fault") corroborates, probably inadvertently, Petitioner's claim of ineffective assistance of counsel.

Finding 34. (SHCR 358-359) . Low levels of intellectual functioning do not suggest future dangerousness. (See Attached Exhibit A, Fallis Affidavit). If trial counsels' strategy was premised on this, it was not sound trial strategy.

These "facts" were unreasonably determined within the meaning of §2254(d)(2)

and cannot be "presumed to be correct" under §2254(e)(1).

Finding 46. (SHCR 361-362)  Counsel <u>did not have</u> and <u>could not have had</u> a strategic reason for <u>not</u> introducing evidence that Mr. Storey "does not fit the criteria for a diagnosis of Antisocial Personality Disorder." The reason counsel did not introduce such evidence is because trial counsel failed to look for or obtain the evidence. Writ counsel obtained the evidence. <u>See</u> Fallis reports (attached to Original Writ Memorandum as Ex. 1 & 2).

## Standards of Review

In its Motion for Summary Judgment, the state, among other things, misrepresents the Supreme Court's holding in *Harrington v. Richter*, 131 S.Ct. 770 (2011), as it applies to the case-at-bar.  State's MFSJ at p. 11. The "could have supported" language taken from the *Richter* opinion and quoted, by the State to emphasize its importance, throughout the motion is applicable <u>only</u> where, unlike here, the state court does <u>not</u> purport to explain its adjudication on the merits in a reasoned decision. In the case-at-bar, the state court filed extensive findings of fact and conclusions of law, so the "could have supported" *Richter* language absolutely does not apply. The United States Supreme Court has confirmed this interpretation of *Richter* in *Wetzel v. Lambert*, 132 S.Ct. 1195, 1198 (2012). In *Wetzel*, the Court omitted reference to the hypothetical "could have supported language" (relied on and

16

emphasized in the case-at-bar) by the state when reciting the standard for a §2254(d) inquiry in which the state court adjudication had a reasoned opinion. See, *Salts v. Epps*, 676 F.3d 468, 480, n. 46 (5th Cir. 2012)(*Richter* hypothetical standard inapplicable because the state court provided its reasoning); see, also, *Sussman v. Jenkins*, 642 F.3d 532, 533 (7th Cir. 2011)("[*Ritchter*]   addresses the situation in which a state court decision is 'unaccompanied by an explanation'"); *Johnson v. Secretary DOC*, 643 F.3d 907, 930 n. 9 (11th Cir. 2011).

The state also erroneously asserts that except for narrow exceptions contained in §2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding "must have been presented to the state court." State's MFSJ at p. 14.The state provides no citation for its assertion, for good reason, the state's assertion is simply untrue.

The state appears to be confusing the independent provisions of §2254(d) and §2254(e). Section 2254(d) is a procedural obstacle that must be overcome before a federal court will review a claim for relief. It effectively bars any federal review, nullifying the federal habeas statute, unless the exceptions of (d)(1) or (d)(2) are met.

Section 2254(e) deals with the federal court's actual adjudication of a claim when and if the claim has satisfied one or both exceptions to §2254(d)'s bar to federal review. While it is true that *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011) limits

§2254(d) scrutiny to the state court record, it is absolutely not true that *Pinholster* limits, in any way, challenges to the correctness of state court fact findings under §2254(e), to the state court record evidence.

Further, the "diligence" standard found in §2254(e)(2) will not bar an evidentiary hearing in federal court since Peitioner's due process rights were violated by the state court's failure to follow state procedural laws in reaching its incorrect decision. State's MFSJ at p. 15.

On page 17 of its Motion, the State claims that Petitioner's *Wiggins* claim fails because Dr. Emily Fallis's June 13, 2012 report, attached to his federal writ is "unexhausted" and, therefore, somehow "procedurally barred." The state's assertion is legally inaccurate, even meaningless. There is no requirement that "evidence" be exhausted and there is no such thing as procedurally defaulting "evidence". Rather, it is "remedies" (not evidence) that must be exhausted (See §2254(b)), and "claims" (not evidence) that may be procedurally defaulted.

"The burden is on Storey to overcome any reasonable argument supporting the state court decision whether articulated by the state courts or not. *Richter*, 131 S.Ct. At 784-85." State's MFSJ at 19. Once again, this statement is inaccurate and misleading. In the case-at-bar, the state court filed findings of fact and conclusions of law. This Court, therefore, is not required to engage in the academic exercise of

18

imagining reasonable arguments that could have rationalized the state court outcome when deciding whether Storey meets the requirements of §2254(d). *Welzel, supra*, at 1198.

Once again, contrary to the State's argument, Storey has not made <u>any</u> "unexhausted claims" in this Court. State's MFSJ at 19. The state is confusing the concepts of "unexhausted claims" with additional information or additional evidence in support of an exhausted, legitimate, constitutional claim. There is no such thing under §2254, Supreme Court law, the Constitution or otherwise as "unexhausted information" or "unexhausted evidence". The "Great Writ" is not simply a "direct appeal".

The state argues in its MFSJ that Petitioner "fails to show that the state court misapplied Strickland." MFSJ p. 20. The state then heads down a rabbit trail engages in an invalid §2254(d) analysis, and implores this Court to follow it into the rabbit hole. The issue(s) under §2254(d) analysis are not whether a petitioner's exhausted constitutional claims are strong, weak, good, bad, or ugly; instead, §2254(d) asks two simple questions, neither of which have anything to do with the strength of the underlying claim. Those questions address the integrity and reliability of the state court decision, and the process by which the state court reached its decision, not whether it reached the right or, arguably the right, decision,. If the state court decision

19

involved an application of contrary constitutional law or was based on an unreasonable determination of the facts, or (as in this case), failed to even follow state procedural law), then §2254(d) is satisfied regardless of how strong the claim is.

Petitioner is entitled to an evidentiary hearing on these issues and should, ultimately, be granted relief.

## REPLY AS TO RESPONDENT'S CLAIM FOR RELIEF NUMBER TWO:

### The State's Purported Race-Neutral Reasons for Striking Venireman Patterson were Clearly Pretextual.

In its Motion, the Respondent consistently mischaracterized Petitioner's arguments and then argues against the mischaracterized argument. For example, Petitioner never contended "that the trial court's denial of the State's challenge for cause renders this rationale pretextual." State's MFSJ at p.45. Petitioner does contend that the trial court's denial of the state's challenge for cause of the African American venireman "is a significant component of a court's evaluation of the State's purported race neutral reasons for their [peremptory] strike," because even the trial judge did not believe the African American venireman said what the state said he said. Petitioner's Memo in Support at 40. The State's bogus attempt at a strike for cause is a red flag alerting all watching that the state may begin to dissemble by proffering a kitchen sink full of false "race-neutral" reasons in order to hide their real reason for striking, which is exactly what happened here.

20

The Respondent defends the obviously pretextual, "race-neutral" reasons proffered by the State's trial attorneys by quoting *Puckett v. Elem*, 514 U.S. 765 (1995), "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible." States MFSJ at 46. The State fails to put the quote in context. The *Puckett* Court went on to say, ". . . implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id*. at 839. In fact, even one "implausible justification" should taint all of the justifications, just as one demonstrable lie in a story should taint the entire story.

Finally, the state cites *Cavalini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 260 n. 9 (5th Cir. 1995) to assert that Petitioner's argument that the state trial attorneys lack of questioning of the African American venireman, on subjects they later expressed grave concern about in their proffered "race neutral" reasons, was evidence of pretext.

First, Petitioner did <u>not</u> argue as the state mistakenly asserts that "failure to ask at least one question on a particular issue establishes the <u>presumption</u> of discriminatory intent." States MFSJ at 46. Once again, the state attributes an argument to Petitioner that was never made, then attacks that argument.

Second, Petitioner's argument is that the fact that the state failed to even question the African American Venireman about areas which the state later used as

their "race neutral" reasons to strike, is evidence of pretext, which it is. Even if it does

not create a <u>presumption</u> of discrimination, <u>it is evidence of pretext</u>.

In *Snyder v. Louisiana*, 552 U.S. 479 (2008) the Supreme Court recognized

lack of questioning by the prosecution as a factor in determining pretext.

> Once [the African American venireman] heard the law clerk's report
> about the conversation with [his academic supervisor], [the venireman]
> did not express any further concern about serving on the jury, and <u>the
> prosecution did not choose to question him more deeply about this
> matter.</u> [emphasis supplied]

*Id*. at 481. The Supreme Court found pretext in the prosecutor's explanations for his

strike.

The point made here was not "waived as unbriefed" as the State mistakenly

contends. The State relies on a civil case (*Cavalini*) which relies on Rule 28 of the

Federal Rules of Appellate Procedure. Neither of which have any relation to the case-

at-bar or the arguments made herein.

Likewise, in the case-at-bar, the prosecutor's failure to question the African

American Venireman "more deeply" or, failure to question him at all on matters the

prosecutor later purported to be very concerned about and actually offered as his "race

neutral" reasons for using a peremptory strike <u>is</u> evidence of pretext and, in fact,

<u>should</u> give rise to presumption of pretext.

The Texas Court of Criminal Appeals accepted the State's trial explanations

at face value without scrutiny and without any critical analysis whatsoever, and in doing so, allowed the state to freely navigate around the intent of *Batson.* If this is, indeed okay, then prosecutors should feel free to teach this technique at seminars. Perhaps they already do.

## <u>CONCLUSION</u>

For all of the above-stated reasons, Respondent's Motion for Summary Judgment should be denied and Petitioner should be granted an evidentiary hearing and should, ultimately, be granted relief including a new trial.

Respectfully submitted,

/s/ Michael Logan Ware
MICHAEL LOGAN WARE
State Bar No. 20864200

1407 Texas Street
Suite 102
Fort Worth, Texas  76102
Telephone:   (817) 338-4100
Telecopier:  (817) 698-0000

ATTORNEY FOR PETITIONER

## **CERTIFICATE OF SERVICE**

I hereby certify on this 2ND day of July, 2013, I served a copy to Georgette Oden, Office of the Texas Attorney General, using the CM/ECF system for the Northern District of Texas. I received a "Notice of Electronic Filing" that this response was forwarded to all parties. Paul David Storey was forwarded a copy by United States Mail. Addressees to each party indicated below:

> Georgette Patrice Oden
> Office of the Texas Attorney General
> P.O. Box 12548
> Austin, Texas 78711-2548
>
> Paul Storey
> TDCJ# 999538
> Polunsky Unit
> 3872 FM 350 South
> Livingston, Texas 77351

/s/ Michael Logan Ware
MICHAEL LOGAN WARE

24