THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PAUL DAVID STOREY,<br>        Petitioner | §<br>§<br>§ | |
| v. | §<br>§ | **4:11-CV-433-O** |
| WILLIAM STEPHENS, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutional Division,<br>        Respondent | §<br>§<br>§<br>§<br>§ | |

---

MOTION AND BRIEF TO REVIEW STATE COURT DETERMINATION OF DUE
DILIGENCE AND REMAND THE CAUSE TO THE COURT OF
CRIMINAL APPEALS TO DECIDE ANY UNEXHAUSTED FEDERAL
CONSTITUTIONAL CLAIMS OTHERWISE PRECLUDED FROM
FEDERAL REVIEW

---

TO THE HONORABLE JUDGE OF SAID COURT:

Petitioner, Paul David Storey, by and through counsel, respectfully moves the

Court, pursuant to 28 U.S.C. §1651 and this Court's ongoing jurisdiction under

Section 2254, to review the decision of the Texas Court of Criminal Appeals

reinstating Petitioner's death sentence and barring any consideration on the merits of

the four violations of federal constitutional rights resulting in his unjust death sentence

identified by the Texas district court, and in support would show the following:

## Preliminary Statement regarding this Court's Jurisdiction

The United States Supreme court denied Petitioner's petition for writ of

certiorari in this death penalty case on May 4, 2020, thereby restoring this Court's

jurisdiction over this writ petition which counsel had originally filed pursuant to 28 U.S.C. §2254, on June 14, 2012.  Fed R. App. Pro. 41.  *Jackson v. Sloan*, 800 F.3d 260, 260-61 (6th Cir. 2015)("Jurisdiction follows the file"); *Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir.1990)("Upon issuance of the mandate, the case was returned to the district court's jurisdiction"). This Court's jurisdiction over the initial writ petition is therefore restored for purposes of this *Motion*.

"It is clear, not only from the language of §§2241 (c) (3) and 2254 (a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  However, this *Motion* does not attack the legality of Petitioner's custody or his conviction or sentence.  It is therefore neither an initial writ petition nor a "second or successive" writ petition under Sections 2241, 2244, or 2254 because it is not a writ petition at all.

This *Motion* instead seeks this Court's direct review of the state's court's procedural determination foreclosing a substantive review of Petitioner's constitutional claims.  This *Motion* also ultimately seeks an Order from this Court remanding the cause to state court for consideration on the merits of unexhausted federal constitutional complaints under 28 U.S.C. §1651(a)(the All Writs Act).  "The

All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 43 (1985). No statute addresses the review of a state court procedural determination for the limited purpose of ensuring review of federal constitutional rights and adherence to controlling decisions of the Supreme Court of the United States. Accordingly, this *Motion* is filed pursuant to 28 U.S.C. §1651(a) as a motion to the only court that currently has jurisdiction to consider Petitioner's specific and narrow legal complaint.[1]

## Procedural History

This Court (Judge Reed O'Connor) denied Mr. Storey's first in time §2254 writ petition on June 9, 2014. *Storey v. Stephens*, No. 4:11-CV-433-O (N.D. Tex. 2014). The Fifth Circuit affirmed. *Storey v. Stephens*, 606 F. App'x 192 (5th Cir. 2015). The Supreme Court of the United States denied his petition for writ of certiorari on October 5, 2015. *Storey v. Stephens*, 136 S.Ct. 132 (2015

On September 27, 2016, an execution date was set for April 12, 2017. On October 17, 2016, Judge O'Connor ordered the undersigned counsel to remain on the

---

1  Section 1651 "does not confer an independent basis for subject matter jurisdiction." *Renteria-Gonzalez v. INS*, 322 F.3d 804, 811 (5th Cir. 2002).  To be clear, counsel for petitioner is relying on the district court's jurisdiction over the initial writ application filed in 2012.

case. (See attached Exhibit C). On March 31, 2017, counsel for Mr. Storey filed a subsequent writ application in state court based on newly discovered favorable evidence that the State had suppressed, and, on April 3, 2017, filed a motion in the Texas Court of Criminal Appeals to stay the execution. On April 7, 2017, the Court of Criminal Appeals granted the stay and remanded the cause to the state district court for further proceedings. *Ex Parte Storey*, Writ No. 75,828-02 (Tex.Crim.App., delivered April 7, 2017)(not designated for publication). Also, on April 7, 2017, Judge O'Connor recused imself from this case. (See, attached Exhibit D).

Petitioner raised the following issues in his subsequent state writ application:

**Issue One: Newly-discovered and available evidence compels relief.**

**Issue Two: The State of Texas denied Applicant his right to due process under the Fourteenth Amendment to the Constitution of the United States by arguing aggravating evidence the prosecution knew to be false.**

**Issue Three: The prosecution introduced false evidence, thereby depriving Mr. Storey of a fair punishment trial and in violation of the Fourteenth Amendment to the Constitution of the United States.**

**Issue Four: The State of Texas denied Applicant his right to Due Process under the Fourteenth Amendment to the Constitution of the United States by suppressing mitigating evidence.**

**Issue Five: By arguing false aggravating evidence and suppressing mitigating evidence, the State of Texas has rendered the death sentence in this case unreliable under the Eighth and Fourteenth Amendments to the Constitution of the United States.**

**Issue Six: The Tarrant County District Attorney's decision to seek death violated the Fourteenth Amendment to the Constitution of the United States by seeking death after offering a life sentence and by failing to consider the wishes of the victim's parents.**

The Court of Criminal Appeals remanded to the state district court on issues two, three, four and five.  After three days of hearings, the state district court recommended relief on four separate constitutional grounds, each of which he determined was sufficient to require the death sentence to be vacated.  The district court also ruled that the issues were not procedurally barred under state law. (See attached Exhibit A, State District Judge Young's Findings of Fact and Conclusions of Law and Recommendation).

On October 2, 2019, the Court of Criminal Appeals in a per curiam decision with three dissenting votes decided the issues were procedurally barred and dismissed the subsequent writ application. (See, attached Exhibit B).  *Ex parte Storey*, 584 S.W.3d 437 (Tex.Crim.App. 2019).  On October 16, 2019, counsel for Mr. Storey filed a *Suggestion for Reconsideration on the Court's Own Initiative*.  The Court of Criminal Appeals denied the *Suggestion* on November 6, 2019, in a 5-4 vote.  Counsel for Mr. Storey filed a petition for writ of certiorari in the Supreme Court of the United States, but that court denied the petition on May 4, 2020.  *Storey v. Texas*, No. 19-7099, 2020 U.S. LEXIS 2569 (May 4, 2020).  There is no current execution date.

At the same time that counsel for Mr. Storey files this *Motion*, counsel is also

5

filing a Fed. R. Civ. Pro., Rule 60(b) motion and second in time, initial §2254 writ petition as well. All three motions are filed in an abundance of caution and are intended to invoke federal judicial power to address the extraordinary circumstances of this case. As detailed in the Rule 60(b) motion, the death penalty in this case was won and protected through an intentional and ongoing fraud on the court. See attached state district court findings (Exhibit A) and Judge Walker's dissenting opinion (Exhibit B). As detailed in this *Motion*, the Court of Criminal Appeals ignored the ongoing fraud found by the state district court and avoided deciding the merits of the federal constitutional claims by dismissing the subsequent writ application on purported state procedural grounds. Without this Court's exercise of its jurisdiction those federal constitutional claims, each of which were found to be meritorious by the state district court judge, will never be reviewed by the Court of Criminal Appeals and never reviewed or enforced by any court, state or federal. Paul Storey will be executed in violation of the Constitution pursuant to an acknowledged ongoing fraud and lies which were identified by the state district judge, but then swept under the carpet in a per curiam opinion by the Texas Court of Criminal Appeals.

## State Habeas Court after its Discovery of Misconduct and its Findings in Support of Relief.

The State of Texas scheduled Mr. Storey for execution on April 12, 2017. The

State, as part of mandatory state law, notified the survivors of the victim, his parents, Glenn and Judith Cherry of the imminent execution.   This notice of imminent execution set off a happenstance chain of events that led to the filing of the subsequent state petition.

After having been informed of Mr. Storey's imminent execution, Glenn Cherry complained in December 2016 to an acquaintance, Cory Session, that he and his wife, Judith opposed Mr. Storey's execution, had always opposed him receiving the death penalty, and had urged the prosecutors to not seek death.  In January 2017, Cory Session notified the undersigned court-appointed counsel for Storey of this significant information. During counsel's follow-up investigation, counsel discovered that none of this information, although well-known to the trial prosecutors, was ever disclosed to anyone associated with Mr. Storey's trial team or the trial team for the co-defendant. Further, they had not disclosed the information to Storey's appellate attorneys, his habeas counsel, the trial court, or even other prosecutors involved in the case such as Chip Wilkinson, who handled the state writ for the State.  The Cherrys' long-standing and steadfast opposition against seeking death was known only to the two prosecutors who sought the death penalty, their supervisor, and their intern.

This revelation was significant. There were strategic reasons for the prosecutors suppressing this favorable information. For example, at the penalty phase in this death

penalty trial, the prosecution falsely but persuasively argued:

> So we get to the last question [mitigation] and that is, taking into consideration everything, Ladies and Gentleman, beginning with the circumstances of this crime – and you know what?  His [Mr. Storey's] whole family got up here yesterday and pled for you to spare his life. And it should go without saying[2] that all of Jonas [Cherry's] family and everyone who loved him believe the death penalty is appropriate.

(Vol. 39; pp 11-12).  Based on this discovery of the suppressed evidence and the falsity of this well-timed and purposeful argument exploiting that suppression, counsel filed a subsequent writ application, which in turn, led to the state district court's order for evidentiary hearings and ultimately, his decision to grant relief on all four constitutional grounds.

**State District Court Hearings and Findings**

---

Three days of hearings revealed the scope and depth of the prosecutorial

---

2   The phrase "it goes without saying" means:

> It is unambiguous, perfectly clear, or self-evident that; to be already widely acknowledged, established, or accepted that. *I know it goes without saying, but the staff restrooms are not to be used by students or visitors. It should go without saying, but you will receive an automatic zero if you are caught cheating on the exam.*

Farlex Dictionary of Idioms ( 2015).

> You say it goes without saying to mean that something is obviously true. *It goes without saying that if someone has lung problems they should not smoke. LAST SENTENCE DELETED*

Idioms Dictionary, 3rd ed (Harper Collins Publishers 2012).

deception.   The prosecutors, Christy Jack and Robert Foran, knew and openly admitted that the Cherrys' strongly opposed Mr. Storey receiving the death penalty but had violated an explicit court order to reveal such information, and instead suppressed it, lied to the jury, deceived the trial court, and then kept it a secret from almost everyone else.   This evidence discovered by the undersigned attorneys representing Storey in January 2017 established the claims in the subsequent state writ application.  The state district court found all four claims to be meritorious.  (Exhibit A). To this day, the state district court's detailed and well supported findings granting relief on four federal constitutional grounds remain undisturbed by any court.

While these constitutional violations are egregious, the basis of this *Motion* is limited to the singular obstacle for the judiciary to even consider them on their merits. The Court of Criminal Appeals never reached the merits of these claims found by the state district court to merit relief.  Instead, it found the entire sordid matter to be unreviewable under state law because a majority of the state appellate court judges decided, in a per curium opinion, that state habeas counsel Robert Ford was not diligent in the failure to discover the prosecution's deliberately hidden misconduct. It is worth noting that at the subsequent state writ evidentiary hearing, both trial prosecutors acknowledged the importance of this favorable information and the importance of disclosing the information. They both maintained, however, that they

had absolutely disclosed this information to the defense. That testimony, however, was not only internally inconsistent, it was absolutely contradicted by all of the other evidence and testimony and was, in fact, found by the state district judge not to be credible.

This *Motion* is devoted to the issue of the diligence of habeas counsel. Like everyone else associated with this case – all prosecutors, jurors, judges, and defense lawyers – Mr. Storey's habeas counsel, Robert Ford, was deliberately deprived of this information. Unfortunately, Mr. Ford died after the resolution of the first state writ application and was not available to testify in the subsequent state writ proceedings. The State argued that Mr. Ford lacked diligence because he should have contacted the Cherrys and interviewed them about their views on the death penalty for Mr. Storey and therefore, these four federal constitutional issues should have been raised in the first state writ. The state district court rejected that argument and ultimately concluded that Robert Ford exercised due diligence as habeas counsel. Due diligence did not require state habeas counsel to seek out and disturb the victim's family with absolutely no reason to believe they would have favorable information that had been suppressed by the state and that could form the basis of writ relief.

This conclusion is crucial to the review of federal constitutional violations in state court discovered after the adjudication of the first state writ application.

Consideration of newly discovered constitutional claims hinge on the diligence of state habeas counsel. Counsel must establish that the factual basis of the newly discovered evidence was "not ascertainable through the exercise of reasonable diligence" at the time of the initial writ application. Tex. Code Crim. Pro. art. 11.071 §5(a)(1) & (e). The threshold legal question for the state courts, then, was whether Mr. Ford's failure to discover what was hidden by the state was due to a lack of due diligence. Based on the evidence at the hearings, the district court reviewed the claims and recommended relief because he found that Mr. Ford's failure to discover what was hidden by the state was not due to a lack of due diligence. Mr. Ford had exercised "due diligence" as required under the state statute. The district court supported his conclusions with solid findings tied to the record. (Exhibit A).

Specifically, the trial court made the following findings of fact that supported the conclusion that Mr. Ford acted with reasonable diligence:

1. Robert Ford, now deceased, was state habeas counsel for Applicant in his initial state writ brought under art. 11.071.

2. Glenn and Judith Cherry, the parents of the victim, opposed Applicant receiving the death penalty. (3.SHRR.167-168; 174; 185).

3. Robert Foran and Christy Jack were the trial prosecutors for the State in both this case and in the co-defendant, Mark Porter's, case. Both Foran and Jack knew, prior to Applicant's trial, that Glenn and Judith Cherry opposed Applicant receiving the death penalty.

4. Neither Foran nor Jack nor anyone else from the State, ever informed

Mr. Ford that Glenn and Judith Cherry opposed a death sentence for Applicant. (Vol. 2, p. 259-260). Likewise, neither Foran nor Jack, nor anyone else from the State ever informed Larry Moore, Bill Ray (Applicant's trial attorneys), or Mark Daniel or Tim Moore (the co-defendant's attorneys), that Glenn and Judith Cherry opposed the death penalty for both Applicant and his co-defendant, Mark Porter.

5. Tarrant County Assistant District Attorney Edward "Chip" Wilkinson, who represented the State on direct appeal and during the initial state habeas proceedings, was unaware of the Cherrys' opposition to Applicant receiving the death penalty. (4.SHRR.19-21).

6. Mr. Ford had a strong reputation for his diligence. He was described by various attorneys and judges as "extremely zealous," "tenacious," "very aggressive," "gifted," a "passionate lawyer," "fearless advocate," "extremely diligent," and invariably regarded as an exceptional and diligent attorney. (2.SHRR.132; 203-204)(3.SHRR.29-30; 100; 203)(4.SHRR.28-31; 40; 53).

7. This Court finds that in most cases family members of murder victims do not wish to speak to lawyers representing the person found guilty of killing their loved one. (3.SHRR.107); (4.SHRR.38).

8. This Court finds that it is highly unusual, in cases such as this one, for the parents of the murder victim to oppose the death penalty for their child's murderer.

9. Robert Foran told Bill Ray and Larry Moore, trial counsel for Applicant, that the Cherrys "preferred not to be contacted." (2.SHRR.252).

10. No witness to these proceedings faulted Mr. Ford or any other of Applicant's counsel, or any of the co-defendant's counsel for failing to contact the Cherrys to determine their views on their respective clients receiving the death penalty.

11. Christy Jack did not inform Mr. Ford that the Cherrys opposed the death penalty for the Applicant and was not aware of anyone else

informing him of that fact.

12. Robert Foran did not inform Mr. Ford that the Cherrys opposed the death penalty for the Applicant and was not aware of anyone else informing him of that fact.

13. Mr. Ford did not know that the Cherrys opposed the death penalty for the Applicant, his client.

14. Mr. Ford would not have discovered the factual basis of these claims through the exercise of reasonable diligence.

15. The factual basis of the four claims before this Court, i.e., the Cherrys' opposition to Applicant receiving the death penalty and the corresponding false argument made by trial prosecutor Jack, was not ascertainable by Applicant or his counsel, through the exercise of reasonable diligence on May 26, 2011, the day the initial state writ was due and was filed.

16. This Court further finds that the failure of Mr. Ford to ascertain the Cherrys' opposition to the death penalty in general and specifically as to the Applicant, does not constitute a lack of reasonable diligence.

17. This Court finds that Mr. Ford acted with reasonable diligence.

In addition to the factual findings, the state district court also made the following equitable determinations which were never addressed by the Texas Court of Criminal Appeals:

1. Because the State concealed the evidence at issue in this subsequent writ application, it has forfeited its argument that Applicant's pleading is barred under the doctrine of forfeiture by wrongdoing. The long-standing equitable maxim is that "no one shall be permitted to take advantage of his own wrong." *Reynolds* v. *United States,* 98 U.S. 145, 160 (1878). *See also Smith* v. *State,* 100 Tex. Crim. 23, 235, 272 S.W. 793, 794 (Tex. Crim. App. 1925)("It is [a] well settled principle of law that a party

cannot benefit from his own wrong [.]"). Because the State secreted evidence it was legally required to disclose, it cannot benefit from its wrong-doing by faulting habeas counsel for failing to discover its own misconduct.

2. For similar reasons, this Court concludes that equity precludes the State from asserting that Section 5 bars this Court from consideration of Applicant's claims. *Fay* v. *Noia,* 372 U.S. 391, 438 (1963)("[H]abeas corpus has traditionally been regarded as governed by equitable principles."). Because the State comes to this Court with unclean hands due to its suppression of *Brady* material and false use of the evidence, it is barred from reliance on Section 5. *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814-15 (1945). This Court therefore equitably estops the State from any argument that Applicant's state habeas counsel, Robert Ford, or any of Applicant's prior counsel, Larry Moore, Bill Ray, or John Stickels, failed to act with due diligence or that the factual basis of the claims was ascertainable. *Gulbenkian* v. *Penn,* 151 Tex. 412,418,252 S.W.2d 929, 932 (1952).

. (See attached Exhibit A, State District Judge Young's Findings of Fact and Conclusions of Law and Recommendation).

## Due Diligence and the Court of Criminal Appeals

The Supreme Court of the United States has held that due diligence "is reasonable diligence, not maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010)(internal citations and quotations omitted). *See also Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)(federal diligence statutes "do[] not require the maximum feasible diligence, but only 'due,' or reasonable, diligence..."); *Schlueter v. Varner*, 384 F.3d 69, 74 (3rd Cir. 2004)("Due diligence ... require[s]

reasonable diligence in the circumstances."). "The standard is not 'extreme diligence' or 'exceptional diligence,' it is reasonable diligence. [The question is]: did the petitioner act as diligently as reasonably could have been expected *under the circumstances*?" *Baldayaque v. United States*, 338 F.3d 145, 153 (2nd Cir. 2003)(emphasis in original). The "diligence requirement does not demand a showing that the petitioner left no stone unturned. Rather, [t]o determine if a petitioner has been [reasonably] diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011)(internal citations and quotations omitted). Under well settled law and widely acknowledged meaning, "due diligence" is "reasonable diligence." *Black's Law Dictionary* 468 (7th ed.)("Due diligence" means "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation.").

A plurality of the Court of Criminal Appeals rejected the trial court's well supported findings in a per curiam opinion and in short *Order*:

> Robert Ford, who was Applicant's habeas counsel on his initial writ application, is now deceased. The trial court found that Ford did not know that the victim's parents opposed a death sentence for Applicant. This finding is not supported by the record. Applicant did not present any evidence showing what Ford did or did not know regarding the victim's parents' anti-death penalty views. The victim's father testified that he has disclosed his anti-death penalty views to "anybody that wants

15

> to know or has ever asked me." This testimony undermines the trial
> court's finding that the factual basis of the remanded claims was not
> ascertainable through the exercise of reasonable diligence prior to the
> filing of the initial writ application. And although the trial court found
> that Ford generally "had a strong reputation for his diligence," Applicant
> presented no evidence showing that Ford was diligent in his [sic]
> particular case.

*Ex parte Storey*, 584 S.W.3d 437, 439 (Tex.Crim.App. 2019)3. The state appellate

court then dismissed Mr. Storey's federal constitutional claims, found meritorious by

the state district court, as an "abuse of the writ." *Id.*

Three judges dissented. *Id.* at 447-463. (Yeary, J., filed a dissenting opinion in

which Slaughter, J., joined); (Walker J., filed a dissenting opinion in which Slaughter,

J. joined). Counsel later filed a *Suggestion for Reconsideration on the Court's Own*

*Initiative* and an *Alternative Suggestion for Reconsideration on the Court's Own*

*Initiative*. The appellate court denied the *Suggestion*, but Judge Newell joined the

three dissenters to reflect that he, along with the three dissenting judges, would have

reconsidered the decision.

The *Alternative Suggestion for Reconsideration on the Court's Own Initiative*

was concerned about the fact that the record initially transmitted to the Court of

Criminal Appeals from the Tarrant County District Clerk failed to include two crucial

documents to the due diligence issue, i.e., *Request for Affirmative Finding That Robert*

---

3 No judge signed the opinion. Three judges dissented and five judges concurred. Evidently, only
one judge adhered to the unsigned opinion of the Court.

*Ford Exercised Due Diligence in His Representation of Applicant* (filed on August 9, 2017) and Petitioner's *Motion to Preclude the State from Contending That Counsel Failed to Exercise Due Diligence In Ascertaining the Cherrys' Opposition to Paul David Storey's Execution* (filed on September 11, 2017). While the State's written documents in reply reached the Court of Criminal Appeals, neither the *Motion* or nor *Request* ever reached the Court of Criminal Appeals. The significance of these documents can be measured by the State's response – it devoted its entire finale exclusively to arguments against the arguments in favor of due diligence. (Clerk's 6th Supp. R. pp. 22-26). Despite having been alerted to an incomplete record, the Court of Criminal Appeals (with one judge changing his mind) let its incompletely informed decision stand.

The state appellate court stated that "Applicant did not present any evidence showing what Ford did or did not know regarding the victim's parents' anti-death penalty views. ... And although the trial court found that Ford generally 'had a strong reputation for his diligence,' Applicant presented no evidence showing that Ford was diligent in his [sic] particular case." *Id*. at 439. The record overwhelmingly refutes these assertions. Because Mr. Ford was deceased, it was impossible to get either his affidavit or his testimony as to what he did or did not know vis-a-vis this newly discovered favorable information which had been suppressed by the State, and the

17

State's related lie to the judge and jury during jury argument on punishment. What the record established was that only the Cherry's and four people in the District Attorney's Office knew.  And none of those people ever told Ford or anyone else with the defense. The circumstantial evidence and expert testimony in the case was not only overwhelming, but uncontradicted. Mr. Ford, like every other lawyer, prosecutor, judge and juror, was unaware of this hidden information that was because Foran and Jack intentionally suppressed this favorable evidence. Furthermore, Mr. Ford's work on this case also reflects his diligence, as does his reputation and the opinions of every witness at the hearings.  The only action Mr. Ford failed to undertake was to interview the Cherrys-the grieving parents of a murdered son-about their feelings on the death penalty. Of course, the prosecutor had already announced to the jury, on the record, in her argument that the Cherrys wanted the jury to return a death penalty verdict and Ford, like Petitioner's trial counsel, had absolutely no reason to believe otherwise. To approach the family of the victim under those circumstances would be offensive, inappropriate and even harmful to the case. See writ testimony of Mark Daniel and Fred Cummings. See, also, Judge Walker's dissenting opinion in this case, joined by Judge Salughter, sighting to Article 56.02 of the Texas Code of Criminal Procedure, "Crime Victim's Rights." "HB 899 is needed to protect the rights of crime victims and to refuse contact from a victim outreach specialist, who may be causing stress or

trauma by contacting the victim." (See attached Exhibit B).

This holding creates a new rule for habeas counsel in death penalty cases. In order to avoid a declaration of negligence and waiver, habeas counsel must seek out the views of the survivors of the victims of capital murders in every single case, whether or not there is any cause to believe they may oppose their client's death sentence. Prosecutors never asked for this new rule, and defense attorneys find it appalling. The survivors certainly do not care to be approached, let alone quizzed about their feelings by the attorneys representing the murder of their loved one. No one wants this new rule, it is offensive and makes no sense.

The state appellate court noted that Glenn Cherry "testified that he has disclosed his anti-death penalty views to 'anybody that wants to know or has ever asked me.'" *Id.* The appellate court's implication takes the relevant portion of Mr. Cherry's testimony out of context and perverts its intended meaning. Under the State's cross examination, Mr. Cherry testified:

A. Yes, I'm against the death penalty.

Q. So that position formed before this terrible set of circumstances, correct?

A. Yes.

Q. And your opposition to the death penalty would be to any – to anybody being executed?

19

A. I don't believe in the death penalty for anybody.

Q. And they asked you about Mr. Storey's mother, about your feelings about that. But that would be for any mother that was going to lose a son, you know, to execution, correct?

A. Yeah, I don't want anybody to have to go through that.

Q. Have you spoken with friends and family about your views on the death penalty?

A. Well, I know most of my family's views, I think.

Q. But, I mean, have you told them your views?

A. Yeah, it's not a secret.

Q. Yeah. And certainly you've told friends?

A. Yeah, anybody that wants to know or has ever asked me or we've ever talked about it.  <u>I don't just go around telling everybody all my view.</u>

(Vol. 3, pp. 174-175). (emphasis added).

The state district judge was called upon to consider different interpretations of testimony, including interpretations in light of other evidence and the testimony of other witnesses. He alone heard Mr. Cherry's inflection, and tone of voice. The trial court observed his facial expressions, his hesitations, his confidence, the pauses, the body language. In accordance with his role, the state judge considered the entirety of Mr. Cherry's testimony and resolved it in favor of his ultimate conclusion that Mr. Ford was reasonably diligent notwithstanding the fact that he did not cold call the

Cherrys and attempt to set up an interview that he had no reason to believe would be productive and every reason to believe would be inappropriate and offensive.

The Court of Criminal Appeals did not defer to the state district court. Rather than reviewing the district court's findings to determine whether they are supported by the record, the Court of Criminal Appeals created yet another new rule. Under well established habeas review, the Court of Criminal Appeals has affirmed that although "the trial court's findings are not automatically binding upon us, [] we [the Judges of the Court of Criminal Appeals] usually accept them if they are supported by the record." *Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex.Crim.App. 2011); *Ex parte Reed*, 271 S.W.3d 698 (Tex.Crim.App. 2008). Rather than considering whether facts developed in the trial court *support* its conclusions, under this new habeas review the court instead looked for interpretations of evidence and/or testimony that might, even though taken out of context, *undermine* the trial court's findings; disregarding or ignoring the overwhelming evidence supporting the findings. *Ex parte Storey*, *supra* at 439. This new rule, then, is a one-time deviation from well established habeas review, i.e., that while "the trial court's findings are not automatically binding upon us, [] we [the Judges of the Court of Criminal Appeals] usually accept them if they are supported by the record." *Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex.Crim.App. 2011); *Ex parte Reed*, 271 S.W.3d 698 (Tex.Crim.App. 2008). It is difficult to

imagine judicial decision-making more adrift and distant from its own jurisprudence. The cost of allowing this state court aberration is nothing less than a permanent block of any federal judicial review of violations of federal constitutional rights, which a state district court so thoroughly investigated and oversaw.

This aberrant Texas Court of Criminal Appeals ruling also indulged in hindsight, imagining what might have occurred had Mr. Ford contacted the Cherrys. Hindsight judicial review of attorney performance is condemned for good reason. As the Supreme Court has stressed:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland v. Washington*, 466 U.S. 668, 689-90 (1984). Hindsight makes it "all too easy for a court ... to conclude that a particular act or omission of counsel was unreasonable." *Id.* "[I]t is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight." *Williams v. Beto*, 354 F.2d 698 (5th Cir. 1965).[4] Accordingly, Mr. Ford's

---

4 Hindsight is also prohibited in review of counsel in civil cases as well. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994)(judicial review "requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight."). Civil liability "is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence. In other words, there is neither a legal nor a moral obligation to guard against that which cannot be foreseen in the light of common or ordinary experience[.]" *Boren v. Texoma Med. Ctr.*, 258 S.W.3d 224,

diligence should be considered under the real-time circumstances of his representation.

There is no doubt that Mr. Ford read the trial record, specifically, the prosecutor's representation that the Cherrys favored Mr. Storey's death sentence. The uncontradicted evidence developed in the state writ hearings is that the prosecution warned defense counsel that the Cherrys did not wish to be contacted. Under these circumstances alone, habeas counsel is not careless or lacking diligence for failing to investigate facts he has been affirmatively led by the State to believe do not exist and which he would have no reason to believe did exist in the first place.

A constitutional imperative of the Due Process Clause is that the prosecution has an affirmative duty to disclose exculpatory or mitigating evidence to the defense. *Brady v. Maryland*, 373 U.S. 83 (1963). The State degrades this constitutional directive when it regards this essential requirement of due process as a treasure hunt, burying exculpatory and mitigating evidence somewhere undisclosed, and leaving it to the defense to find it on their own, without any reason to believe it even exists. This case is worse in that the prosecution actively misled everyone to reasonably believe that no such treasure existed and so any pursuit of such imaginary treasure would not be worth the hunt. *Banks v. Dretke*, 540 U.S. 668, 696 (2004)("'prosecutor may hide,

---

230 (Tex.App. – Dallas 2008, *no pet*.)(internal citations and quotations omitted).

defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process.").

In *Banks*, the prosecution withheld its extensive coaching of a witness (Deputy Huff) and that another witness (Farr) was a paid police informant. The *Brady* violations were discovered in federal habeas proceedings. The Fifth Circuit Court of Appeals barred consideration of the Brady claim because it decided that "Banks was not appropriately diligent in pursuing his state-court application" and "should have at that time attempted to locate Farr and question him; similarly, he should have asked to interview Deputy Sheriff Huff and other officers involved in investigating the crime." *Id*. at 688.

The Supreme Court reversed. Because the State had represented to counsel that it would disclose *Brady* material, the Supreme Court held, "Banks cannot be faulted for relying on that representation." *Id*. at 693. The Supreme Court concluded:

> In short, because the State persisted in hiding Farr's informant status and misleadingly represented that it had complied in full with its *Brady* disclosure obligations, Banks had cause for failing to investigate, in state postconviction proceedings, Farr's connections to Deputy Sheriff Huff.

*Id*.

The case-at-bar represents an even more egregious violation of due process than *Banks*. Counsel in *Banks* did not file a *Brady* motion or litigate the issue. In this case, the district court ordered the prosecutors "to produce any and all such evidence" "of

24

material importance to the Defense even though it may not be offered as testimony or exhibits by the prosecution at the trial of this case on the merits."   (Vol. 2, p. 77)(Applicant's exhibit 2).   At the writ hearing, the State and even the trial prosecutors agreed that the Cherrys' opposition to Petitioner receiving the death penalty would have been included in this order and therefore required disclosure. (Vol. 2, p. 78).   Their discredited response was that they <u>did</u> disclose it. If an assurance from a prosecutor can constitute cause for failing to conduct further investigation, surely habeas counsel, who relied on a court order as well as representations of prosecutors, can be excused in the same way.   *Id.* at 694 ("If it was reasonable for Banks to rely on the prosecution's full disclosure representation, it was also appropriate for Banks to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction.").

**The Court of Criminal Appeals' anomalous new procedures are inadequate to shield it from federal judicial review of federal constitutional rights.**

"[F]ederal habeas review is [not] barred every time a state court invokes a procedural rule to limit its review of the merits of a state prisoner's federal claims. We have recognized that [t]he adequacy of state procedural bars to the assertion of federal questions ... is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." *Cone v. Bell*, 556 U.S. 449, 465-66 (2009)(internal quotations and citations omitted).  In *Prible v. Davis*, 2020 U.S. Dist. LEXIS 89711

(S.D. Tex. May 20, 2020) the Court found that the State's action in suppressing evidence was sufficient "cause" to disregard the state procedural bar found by both the state district court and the Texas Court of Criminal Appeals, and reached the merits of Prible's constitutional claims. Quoting *Barrientes v. Johnson*, 221 F.3d 741, 763 (5th Cir. 2000) and *Fairman v. Anderson*, 188 F.3d 635, 641 (5th Cir. 1999), the Court stated as follows:

> The resolution of 'when and how defaults in compliance with state procedural rules can preclude federal court consideration of a federal question is itself a federal question.'"

This Court should review the adequacy of the state procedural bar in this case. It is a one-time deviation from its own law.

State procedural rules may bar federal habeas review only if they are "clear," "firmly established," and "regularly followed" when applied against a state prisoner asserting federal constitutional claims. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)(holding rule not firmly established "cannot bar federal judicial review of petitioner's equal protection claim."). Otherwise, federal courts can review state procedural decisions on the grounds they are inadequate to preclude review. "The purpose behind the adequacy requirement is notice. A petitioner must have notice of how to present his claims in state courts if his failure to present them is to bar him from advancing them in federal court." *Ford*, 498 U.S. at 423-24 (internal citations

26

omitted).

The Court of Criminal Appeals' requirement that state habeas counsel seek out victim survivors – even when the prosecution has informed them that they favor death for Mr. Storey and do not wish to be contacted by defense counsel – is new. No one, including current habeas counsel, was on any notice of this unexpected burden. The review of state court factual determinations is also new and aberrant, and directly contradicts state procedural law that is clear, firmly established and regularly followed in all other cases. It – and its burial of federal constitutional violations – begs for federal review.

"[S]tate procedural requirements which are not strictly or regularly followed cannot deprive [federal district courts] of the right to review." *Barr v. Columbia*, 378 U.S. 1.46, 149-50 (1964). The *Storey* rules for state habeas counsel and review of counsel's diligence are new and anomalous. They were never applied before this case, and never applied thereafter. This circumstance alone invites this Court's review.

As a one-time-only invention, Mr. Storey and his counsel "could not fairly be deemed to have been apprised of" the Court of Criminal Appeals' new rule. *Lee v. Kemna*, 534 U.S. 362, 375-76 (2002)("exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question" by the

federal court); *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 457-58 (1958)("Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights."); *Davis v. Wechsler*, 263 U.S. 22, 24 (1923)(Holmes, J.)("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice."). This Court is more than justified in reviewing the state court's procedural determination. *Barrientes v. Johnson*, 221 F.3d 741, 763 (5th Cir. 2000)("To the extent, therefore, that the Texas Court of Criminal Appeals decided issues of cause and prejudice in dismissing [defendant's] [successive] State Petition, we are not bound by its decision.")(internal quotations omitted).

Mr. Ford did not fail to exercise due diligence. Further, the nature of the State's wrongdoing foreclosed any inquiry into Ford's diligence. The state district court's findings were not only well supported, they were overwhelmingly established by the testimony and other evidence adduced at the hearings. Its legal determination that the State was foreclosed from arguing a lack of due diligence is equally well founded and left undisturbed by the Court of Criminal Appeals. This Court should grant this *Motion*, find habeas counsel to have been diligent notwithstanding his failure to find

what the state had hidden, and require the Court of Criminal Appeals to address the merits of the serious violations of federal constitutional rights revealed and documented by the state district court.

## PRAYER

Counsel prays this Court to grant this *Motion*, determine that habeas counsel, Mr. Robert Ford, did exercise due diligence and remand the cause to the Court of Criminal Appeals for its consideration of the federal constitutional claims raised in Movant's subsequent state writ application.

Respectfully submitted,


/s/ Keith Hampton
Keith S. Hampton
State Bar No. 08873230
Attorney at Law
7000 North Mopac Expressway
Suite 200
Austin, Texas 78731
(512) 476-8484 (office)
(512) 762-6170 (cell)
hamplaw@swbell.net

Michael Logan Ware
State Bar No.  20864200
Attorney at Law
300 Burnett Street
Suite 160
Fort Worth, Texas 76102
817-338-4100 (office)
817-698-0000 (fax)
ware@mikewarelaw.com

**Attorneys for Paul David Storey**

**CERTIFICATE OF SERVICE:** By my signature below, I certify I have served a true and correct copy of the foregoing pleading upon counsel for the State, Attorney Pro Tem Travis Bragg, electronically at Travis.Bragg@oag.texas.gov on July 2, 2020.

Michael Ware

**CERTIFICATE OF CONFERENCE**: I certify that on Tuesday, June 30, 2020, my paralegal, Jena Parker, conferred with Respondent's counsel, Travis Bragg and he opposes this motion.

Michael Ware